# DECISIONS

OF THE

# COURT OF APPEALS

## OF KENTUCKY.

FALL TERM....1844.

## Winchester & Lexington Turnpike Road Company *vs* Vimont.

CHANCERY.

ERROR TO THE FRANKLIN CIRCUIT.

*Case 1.*

*Sale of Turnpike Roads. Chancery.*

JUDGE BRECK delivered the opinion of the Court.

*June 15.*

THE decree in this case directs a sale of the Winchester and Lexington Turnpike Road, excluding the State's interest therein, in the following manner: "The Commissioner shall first offer said road for the least number of years, for which any one will pay Vimont the sum of eleven thousand three hundred twenty dollars ninety cents, with interest, &c., and if no one will bid for said road for any number of years as above directed, he shall sell the same absolutely."

The decree of the Circuit Court.

From this decree the Company has appealed to this Court, and the only question for our determination arises upon that portion of the decree which directs a sale of the road.

We are very clearly of the opinion the decree is erroneous and cannot be sustained. The Company is a corporation, created by legislative enactment, with various defined corporate powers, rights and privileges conferred,

Turnpike roads cannot be sold to satisfy debts due by the Companies who became indebted

WINCHESTER &
LEXINGTON T. R.
COMPANY
*vs*
VIMONT.
_____
for their con-
struction, nor
can the stock
therein.

not alone nor mainly in view of private and individual, but of public interest and convenience. In virtue of the powers thus conferred, *the road* has been constructed, gates have been erected and tolls are now being collected thereon, in conformity with the provisions of the charter. It must be presumed that the controlling consideration in granting the charter, was the construction of the road, and that it should be kept and continued in repair for the convenience of public travel thereon. The decree directs that it shall be sold, and sold absolutely, if necessary for the payment of Vimont's demand. But what is to be implied by a sale of *the road*, and what will be the acquisition of the purchase? It certainly cannot imply a sale of the stock, for that belongs to individuals and cannot be taken and sold for the discharge of the debts of the Company. The stockholder has paid for his stock, and it is as much his private and individual property as any other he may possess.

It can hardly be presumed that a sale of the *mere road*, what the term in common parlance imports, was contemplated. It is true the road, consisting of a narrow strip of ground, between Winchester and Lexington, with a partial covering of rock upon it, belongs to the Company, but only for particular uses and purposes. As to the land, the Company has merely a right of way over it, for the road, for its construction and continuance. It can be used for no other purpose, and when it shall cease to be so used, it will revert to the donors or grantors thereof to the Company. The purchaser therefore, would acquire nothing, which he could render available and productive, unless the corporate powers of the Company would follow or be included in the sale of the road. But it is evident this would not be the case. The power for the control and management of the road, according to the provisions of the charter, is vested in the owners of the stock, which they exert through the officers whom they are authorized to appoint. This power would not be acquired by the purchaser, as the stock is not to be sold. The acquisition of the purchaser, therefore, would not *enrich him*, but would render the Company *poor indeed*. The corporation would not only then be, as corporations are said to

be, *without a soul*, but it would thereby be without sub-
stance. The inevitable effect of such a sale would be to
destroy the road and the corporation. It would be a use-
less, ruinous, and unnecessary sacrifice of private inter-
est, and tend to the destruction of a cherished object of
public interest and convenience. We think there is
nothing in the history of the case, which requires or au-
thorizes the sale of the mere road.

But can the *sale of the road* imply a sale of the tolls or
profits of the road? This seems to us to be the only light
in which it can be viewed, which is at all plausible. But
the decree does not, in terms, direct a sale of that kind,
and if it did, or can be so regarded, it would, in our
opinion be unauthorized. No sale of the kind or analo-
gous to it, has, we · apprehend, ever been sanctioned by
this Court—a sale of the profits in this case, would be
somewhat analogous to a sale of a *chose in action*. Such
sales are not made by Courts of Equity in Kentucky.
They would be attended with ruinous sacrifices, and the
power as well as the policy of directing them may be well
questioned. The practice of Courts of Equity has been,
where a debt has been attached or guarnisheed, to order
the collection of the debt, or to direct the debtor to pay
over the money, when due, to the attaching creditor.

And such, we think, should have been the decree in
this case. Vimont is entitled to the tolls received upon
the road after applying such portions thereof as may be
necessary for keeping it in repair, and for defraying the
necessary and proper incidental expenses of the Compa-
ny; subject to such reductions, the Court, by appropri-
ate decree, should have directed the tolls, the nett profits
of the Company, to be paid over to Vimont, at reasona-
ble periods or intervals, through the officers of the Com-
pany, till his demand shall have been discharged; and
power over the case should have been retained by the
Court, for the purpose of enforcing, from time to time,
such decree.

It does not appear that such profits will not be ade-
quate in a reasonable time, for the payment of the de-
mand. Such decree, while it will not sacrifice private
nor public interest, will give Vimont, and more especially

WINCHESTER &
LEXINGTON T. R.
COMPANY
*vs*
VIMONT;

It is proper, and
the Chancellor
may decree the
payment of the
profits of a Turn-
pike road to be
paid to a creditor
in satisfaction of
his demand, and
to this end it is
proper for the
Chancellor to re-
tain the cause
until this is
done.

in view of the origin and history of his demand, every thing which, in a Court of Equity he can in justice ask or expect.

Wherefore, the decree is reversed and the cause remanded for further decree and proceedings, consistent with this opinion.

*Woolley and Johnson* for plaintiffs: *Eginton, Robertson, Morehead & Reed* for defendant.

NOTE.—This cause should have been published in the fourth volume, but was overlooked.