JUDGE PBYOB
delivered the opinion op the court.'
The appellee Murty Shea instituted this action against the Louisville, Cincinnati & Lexington Railroad Company, on two bills of exchange drawn in his favor by its president, J. B. Wilder, on S. S. Eastwood its secretary, and accepted by the latter as such, payable at the Bank of Louisville. During the progress of the action a supplemental petition was filed, alleging an additional indebtedness to the appellee by the company, the entire claim amounting to about $3,000. The railroad company having been served with a summons, and making no defense, a judgment was rendered by default. The appellee had divers persons summoned as garnishees, under the act of March 15,1870, entitled “An act to authorize creditors to garnishee before judgment,” making an affidavit that the collection of his claim would be endangered by delay, etc. The appellant J. B. Wilder, the president of the company, and John A. Cassel and S. George Cecil, employees of the road, were summoned as garnishees, the last two being freight, passenger, and telegraph *132 agents, and at the time of the service of the garnishment discharging their duties as such.
The appellant (the president) J. B. Wilder filed his answer, stating thatec he had not had, since the service on him, any money or choses in action in his possession belonging to the defendant the railroad company, nor any equitable interest of the defendant, nor has he been indebted to it any sum whatever.” This answer of appellant was adjudged insufficient, and an additional response was made, to the effect that he was not indebted to the defendant in any manner, and that the defendant was indebted to him in a large sum for services rendered and for money loaned. He also alleged that he was the president of the company, and managed its financial affairs for the benefit of stockholders and creditors; that he had no control of its choses in action or other equitable interests, other than such as are incident to his trust as president; that all of the property of the company' was covered by mortgages given to secure large sums of money owing by the latter to Green, Douglass, and others. The ticket and freight agents answer and state that, as ticket and freight agents, they collected moneys from passengers and for freight carried over the road, and had collected, jointly, since they were garnisheed, about $3,100; that, by the rules and regulations of the company, they were required to send the money collected by them daily to the treasurer of the company, at Louisville, to be used in maintaining and operating the road, etc.
After these answers were filed a rule was awarded against the appellant and others to make full, complete, and specific answers, and to discover on oath all moneys and choses in action of the railroad company in their hands or under their control since and at the time of the service of the attachment in the action. This rule was served on appellant, and having failed to answer, an attachment was issued against him for failing to. respond to the rule, and further to show cause why he should *133 not be punished for contempt, etc. Still failing to answer, and it appearing by proof in open court that the appellant had directed the money to be sent to Louisville by the agents, as was their previous custom, a judgment was rendered, directing him to pay appellee’s debt, reciting that he should have a credit therefor in his settlement with the company.
On this state of the pleading the case was brought to this court by the president (present appellant), and the mortgagees not being parties to the action, the importance of the question involved necessitated a reversal of the case for further preparation. The plaintiff below (appellee here), instead of following the mandate of this court, by filing an amended petition, prepared and filed what is denominated a supplemental affidavit, upon which an attempt is made to bring the proper parties, before the court. In the present condition of the record, this may, nevertheless, be considered as an amended petition, in order that the principal question in the case may be determined.
An attempt is being made, as was said in th.e former opinion, to make the appellant, who, at the rendition of the judgment, was president of the corporation, personally liable, for the debts of the company, by reason alone of his supposed control of the moneys received from the earnings of the road. The evidence is that the fund sought to be subjected to the payment of appellee’s claim is in the possession of the officers and agents of the road entitled to its custody, and is being collected in the usual manner by ticket agents and others, whose duty it is to receive moneys from ■ passengers and for freight. The proof conduces also to show that, when those agents were garnisheed, the appellant, as president of the company, ordered, them to forward the money collected, as was their habit, upon a promise of full indemnity in the event they were made personally liable, and upon the faith of this agreement the money was forwarded.
*134 Upon the return 'of the cause to the lower court, the appellant filed an additional response, in which he denies having had any money in his hands, belonging to the company, at the institution of the action, and that at the time he was only the president, assuming the executive control of the corporation, in so far as he was clothed with authority by its charter and by-laws, and the directions given him by the board of directors; that all of the income was necessary, and used in the payment of the running expenses of the road, and then not sufficient for that purpose; that the mortgagees of the road, by a proceeding in the Louisville Chancery Court, had caused the road to be placed in the hands of a receiver, and all the moneys, choses in action, equitable interests, etc., had been delivered over to that officer by the then officers of the company including the appellant.
This response was deemed insufficient, and the appellant adjudged to be in contempt, in failing to pay the money as directed by the former judgment, and an attachment awarded against him, of which he is again complaining.
As said by this court, in a response to the petition for a rehearing, the payment of the money under an order of the court, with all the proper parties before it, would have fully protected the appellant; and while this is conceded, it by no means follows that the funds of such a corporation can be reached by this character of proceeding. This is the question now to be determined.
It is proper to notice first the point suggested by counsel for the appellant, that the garnishee having denied his indebtedness, it was error in the court below to hear any proof in regard to it. Section 247 of the Code provides, that when a garnishee makes default by not appearing, the court may hear proof of any debt or property owing, or held by him, to or for the defendant. Section 248 provides, that if the garnishee fails to make a satisfactory disclosure to the plaintiff, the latter may *135 proceed by action against him by petition, verified as in other cases, and causing a summons to issue, etc. It results, therefore, that a response by a mere garnishee, when no action has been instituted against him, denying his liability, terminates the case so far as his rights are to be affected, and the court has no right to hear proof conducing to show that his denial is untrue. It is proper, however, to waive this question, as the principal point in the case must be settled.
Among the provisional remedies given by the Code, we find that a creditor, upon a proper state of case, may have the debtor arrested and lodged in jail, unless he gives bail. This is called an order of arrest. He may have the property of the creditor taken and held to satisfy his debt. This is an attachment. He may have the credits, choses in action, etc., of his debtor, owing by or in the hands of others than the debtor, subjected to his debt. This is garnishment.
When there is a garnishee there must also exist the creditor and debtor — three or more parties in court in order to reach the money in the hands of a garnishee. If it was alleged that J. B. Wilder as an individual was indebted to the company, there could be no doubt but that the proceeding would be proper, but the attempt is to make him liable as the chief executive officer of the company, by reason of his control over the funds of the company in the hands of the treasurer or other agents.
What power he has in the disposition.of the funds is to be exercised in common with the board of directors, or rather the board, of which he is a member, must direct or sanction these appropriations of money. The president and directors must be regarded as the corporation, and the funds in the possession of either, or all, as well as of the agents of the company, are in fact in the possession of the corporation.
Here then is a corporation engaged in transporting passengers and freight from one part of the state to another. *136 Its convenience and use to the public constitute the consideration upon which are based its corporate privileges. Its continued use for purposes of trade and commerce is demanded by the interests of the public, and the chancellor will not undertake to appropriate the income of the road to the payment of its debts in a proceeding like this, when the result must necessarily be a limitation of its use by the public. To thus appropriate the means necessary to pay the employees and other running expenses of the road would not only endanger the rights of the public, but prevent transportation of freight and passengers altogether. The appellee in this action, by ordinary proceedings is insisting upon his right to appropriate the money of the company in the hands of the president or treasurer to pay his debt, regardless of the rights of the public or other parties in interest.
In the case of the Winchester & Lexington Turnpike Road Co. v. Vimont (5 B. Mon. 1) the decree directed a sale of the turnpike road to pay the debt. The judgment was reversed, and the court below directed that the net profits from the tolls should be paid over to the creditor, retaining enough to keep the road in repair, and for defraying the necessary and proper incidental expenses of the company. The opinion in the case referred to proceeded on the idea that the rights and privileges granted the company were not alone of private and individual, but of public interest and convenience. A common-law court would scarcely undertake to investigate the condition of the company by determining the rights of all the parties in interest with a view of enforcing such a claim.
Besides it is the creditor attempting to garnishee the money in the hands of the debtor. A judgment has already been rendered for the debt, and the creditor is now seeking to compel the corporation to pull the money out of its pocket, and upon its refusal to do so to make its president personally liable. The possession of Wilder as president was the pos *137 session of the company, and .there is no rule of law or equity or any provisional remedy by which the plaintiff, the creditor, may garnishee the defendant, his debtor.
In the case of McGraw v. The Memphis & Ohio Railroad Co., the treasurer of the company was garnisheed under a provision of the Tennessee Code, declaring “ that all property, debts, and effects of the defendant in the possession of the garnishee or under his control, shall be liable to satisfy plaintiff’s judgment from the service of .the notice,” etc. It is there said that the servant who feeds, waters, and curries his master’s horse and keeps the “key of the stable, the master, having the actual and dominant possession and control; the clerk who opens and shuts the store and sells the goods, subordinate to the actual possession of the merchant; the treasurer of the corporation who has charge of the safe and the moneys therein, and receives and pays out, under the immediate direction and control of the principal corporate officers, are not to be deemed in such possession and control of the properties as subjects them to garnishment.”
The president of this corporation is not vested with the power to dispose of the, funds of the company as he may see proper, and these funds are not actually in his possession, but are in the treasury, and in the .possession of the company.
The appropriate remedy in such a case is by application to a court of equity, seeking a, discovery as to the condition of the company; and upon the failure of the chief officer or officers to pay when directed, they may be imprisoned for contempt, and the chancellor will take possession of the road, by placing it in the hands of a receiver, and apply the net income or any surplus fund to the payment of the creditor’s claim.
To permit every and any agent of a corporation like this to be garnisheed before or after judgment would result in the sacrifice of all the private and public interests connected with it. The chancellor, by giving to the creditor the income of *138 the road, retaining enough to defray the necessary expenses of the corporation, has given him all that he has the right to demand, and at the same time preserves the corporate property for private and public use. Nor does this ruling prevent a corporation from being garnisheed as the debtor of a third party, whose creditor is seeking to make his debt. In such a case, however, the court will require payment to be made in the same manner as if the company were the real debtor.
We are of the opinion that the response of the appellant was sufficient. The judgment is therefore reversed, and cause remanded with directions to discharge the rule, and for further proceedings consistent with this opinion. (Fowler v. Pittsburgh & Fort Wayne Railroad, 35 Penn.; 9 Mass. 265; 7 Cowan, 294.)