## T. C. HART *v.* TRUSTEES OF PRINCETON COLLEGE.

**Debt of Corporation.**
> Where a corporation owes a debt, and third persons, without any consideration, moving from the debtor or even a request from it, execute their note to the creditor for the debt, it is neither payment, novation, nor accord and satisfaction.

**Novation.**
> There can be no such thing as a novation by agreement to which the debtor is not a party.

**Accord and Satisfaction.**
> There can be neither accord nor satisfaction in a case where the note of a third person is given for another's debt, where the same is not given or accepted, or agreed to be accepted, in discharge or satisfaction of the debt.

**Liability of Private School Corporation.**
> A private corporation engaged in conducting a college like an individual is not exempt from the payment of its debts incurred in the conduct of its school, and there is no public policy which forbids the sale of its property to pay its indebtedness.

APPEAL FROM CALDWELL CIRCUIT COURT.

February 21, 1879.

Opinion by Judge Cofer:

The debt sued for was contracted by the trustees of the college for services to be rendered to the corporation. It was the corporation's debt, and the undertaking of Calvert and others was merely as sureties and guarantors. This is evident not only from the language of the writing dated July, 1872, but also from the parol evidence, and there is no foundation in the evidence for the position assumed by the corporation in its pleadings and in the argument of its counsel, that the appellant was to look to Calvert and his associates for any balance of his salary not paid out of money received for tuition. In the writing they expressly undertake to pay in case it is not collected from the corporation, which is the language of guaranty and not of an original debtor. Moreover, appellant continued after its execution to take the obligations of the corporation as his annual salary fell due, which shows that both parties then understood that it was liable for the whole salary, and the absence of any stipulation that these obligations were only payable out of the tuition fees shows that they did not understand that the corporation was liable only to the extent of that fund.

Nor was the appellant bound to see to it that the fund out of which he was to be paid was applied to that purpose. That stipulation was made for his benefit, and he had a right to waive it without thereby losing his right to look to other resources of his debtor for payment.

It was the duty of the corporation to pay him out of that fund, but it failed to do so, and now that same corporation attempts to set up its own default and disregard of its obligation as a defense, upon the ground that the appellant consented to or acquiesced in the use of the money received for tuition to pay other teachers, and the expenses of the college, and for purposes other than the payment of his salary. In other words, the corporation now says, "I agreed to pay you out of a particular fund; that fund was large enough to pay you in full, but I owed other debts and had expenses to pay, and you consented that I might use the money out of which I had agreed to pay you to meet these debts and expenses, and by such consent you have discharged me from liability to pay you at all." That there has been a change in the board of trustees makes

no difference. It is the same corporation now that it was when the contract with appellant was made, and it cannot set up even the misconduct or fraud of a former board as a defense, unless it could connect the appellant with it in some way, which is not even attempted.

It is not insisted that even if the corporation was originally liable it has been discharged by the execution and acceptance of the note of Calvert and others, of date of July 8, 1874. Prior to its execution Calvert and Turner were only liable as guarantors, and Dawson was not liable at all. The note made them liable as principal debtors, and they might have been sued without joining the corporation. But we are unable to perceive any ground upon which the execution and acceptance of the note can have operated to release the corporation. That the obligors use language which indicates that the note is for their individual debt cannot have that effect in this case on the face of the fact that it was the debt of the corporation for which they were only bound previously as mere guarantors. If the obligors had been sued on the note and had sought to defend on the ground that it was given as a mere guaranty or as collateral security for the debt of the corporation there might possibly be some force in the suggestion that both obligee and obligors had called it the debt of the obligors, and therefore would not be permitted to say it was not. But in a suit against the corporation the utmost effect the statements contained in the note can have is as evidence conducing to prove that the debt was originally the debt of those individuals, and not of the corporation, and that it was not their debt has already been proven.

The corporation was not a party to the execution of the note or of the guaranty previously given. The appellant did not agree that in consideration of either or both of these papers he would release the corporation. Calvert and his associates were mere volunteers. The corporation gave them nothing to assume its debt, nor did it give the appellant any consideration for the illegal acceptance of either, or for its discharge from liability on its original agreement with the appellant. Indeed, it never contracted to be released, or even asked it. The case is simply this: the corporation owed appellant a debt, and third persons, without any consideration moving from the debtor, or even a request from it, execute their note to the creditor for the debt. This was neither payment, novation, nor accord and satisfaction. It was not payment because not so intended or regarded by the parties at the time or afterward, and because

done by mere volunteers without the request or even consent, so far as appears, of the debtor.

There could be no such thing as a novation by agreement to which the debtor was not a party. There was neither accord nor satisfaction, because the note of Calvert, etc., was neither given nor accepted, nor agreed to be accepted, in discharge or satisfaction of the debt. The corporation afterward recognized its liability to the appellant by an entry upon its records; it has never paid the debt, nor contracted with any one to pay for it, and it is not easy to see even plausible grounds for contending that it has been released.

But it is contended that the corporation had no power to create debts beyond its income and surplus resources, and that those having been exhausted the appellant is without remedy. This contention is based upon two ideas: First, that the charter only confers upon the board of trustees power "to keep such number of qualified professors in the several chairs as the means and exigencies of the institution may in their judgment require;" and second, that the college being established to promote education, the public has such an interest in it that the law will not subject it to sale to satisfy the debts of the corporation, whereby it may be destroyed to the prejudice of public education.

In the first place the record does not show that more professors or teachers were employed than the means and exigencies of the institution required. It is nowhere even attempted to be shown either in pleading or by evidence that such was the fact. But if it were, the provision of the charter referred to is directory merely, and not a limitation upon the power of the trustees.

In the second place the corporation is private and not public or quasi-public. It owes no duties to the public which it can be compelled to perform, or for the nonperformance of which it or its managing officers can be punished. It is no more a quasi-public corporation than a manufacturing or mining corporation in whose operations the public are interested because they add to public convenience, comfort and prosperity. Princeton College, like an incorporated manufacturing or mining company, has its stockholders who, if it prospers, will be entitled to receive the profits in dividends, and like such corporations is bound to pay its debts, and cannot hold its property while they remain unsatisfied.

Counsel cites the case of *Winchester & Lexington Turnpike Road Co. v. Vimont,* 5 B. Mon. 1, in support of the position that the prop-

erty of the college corporation cannot be sold. This case rests upon the grounds, First, that the corporate rights, powers and privileges of the company were conferred not alone nor mainly in view of private and individual, but of public interest and convenience, and with the view that the road should be kept open and in repair for the convenience of public travel thereon, and it might well have been added that as it was the duty of the government to establish and maintain public highways, and the government had created the turnpike company, its agent to perform, pro hac vice, that duty, it could not consistently permit its own agency to be interfered with in the discharge of the functions and duties of government; second, that the company had no such estate or interest in the thing ordered to be sold as would vest in the purchaser any right whatever, and therefore a sale without benefiting the purchaser, and consequently without benefiting the creditor, would not only deprive the public of the use of the road, but would destroy the property of the stockholders.

The company had but an easement in its roadway, and the moment it ceased to hold that easement for the purpose for which it was granted, the easement would be gone. It would not pass to the purchaser, but would revert to the owners of the fee in the soil over which the road passed.

Not so in this case, however. The corporation styled "Trustees of Princeton College" owes no duty to the public which it can be compelled to discharge. It may maintain a school or not as its managers may decide. But whether it supports a school or not its title to its property and franchises is unaffected. It does not, like the turnpike company, hold a mere easement in property which will be forfeited by non-user, but it owns the fee without limitation or restriction either upon its tenure or power of alienation. A purchaser who acquires its title, will have a complete title, and may use the property as though it had never belonged to a corporation.

There is no public policy which forbids the sale of property so held. The interests of education do not, in our opinion, demand any such rule. Education, as well as common justice, will be best served by requiring educational as well as other institutions to pay their debts when they have property, which in the hands of individuals would be subject to seizure for debt. Incorporated institutions of the kind have no right to such an advantage, if it be an advantage, over individual enterprise; and there is, as we conceive, no more reason

in law, in morals, or in public policy, for exempting from debt the property of an incorporated company devoted to educational purposes than there is for a like exemption of the property of individuals used in the same way. The legislature has not deemed it right to declare that either shall be exempted, and no authority for exempting either has been cited. The debt sued for was created in conducting the college, and if the property of the corporation cannot be subjected to this debt, then it cannot be subjected for any, and we have the novel spectacle of a debtor holding the absolute title to thousands of dollars worth of unencumbered property and yet beyond the reach of its creditors. There is no precedent requiring us to sanction such a doctrine, and we cannot consent to make one.

There is no evidence showing that the debt was created in bad faith on the part of either the trustees or of the appellant, or that the funds of the corporation have been wasted or misapplied; and if they have been that is no answer to a creditor who did not participate in such waste or misappropriation. But we do not perceive any ground upon which the appellant can invoke the aid of the chancellor. He is entitled to a judgment in personam against the corporation for his debt, which may be enforced by an ordinary fi. fa.

Judgment *reversed* and cause remanded for a judgment in conformity to this opinion.

*T. C. Dabney, J. R. Hewlett, for appellant.*
*C. T. Allen, P. H. Darby, for appellee.*