OLD STATE ROAD & RIPPLE CREEK TPK. CO. *v.* BENJAMIN SMITH, TRUSTEE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 1—125.]

**Sale of Franchises.**

A franchise to build and operate a turnpike road cannot be made the subject of sale in the absence of some special legislation authorizing it.

**Bonds of Turnpike Company.**

> Where, pursuant to the provisions of the act of February, 1872, empowering a turnpike company to issue its bonds, a company issues its bonds and executes a mortgage to secure the bondholders, and the officers and directors are the creditors, and the transaction is in good faith, such bonds will be held valid even though issued by such directors to themselves, when they have advanced the money to build the road.

### APPEAL FROM CAMPBELL CHANCERY COURT.

### June 1, 1880.

OPINION BY JUDGE PRYOR:

It is now the settled law of the state that such a franchise, the right to which is involved as in this case, cannot be made the subject of sale, in the absence of some special legislation authorizing it. Since the case of the *Winchester & Lexington Tpk. Road Co. v. Vimont,* 5 B. Mon. 1, various manuscript opinions have been delivered following the principles there announced. Also, the cases of *Applegate v. Ernst,* 3 Bush 648; *Elizabethtown & Paducah R. Co. v. Trustees,* 12 Bush 233; *Phillips v. Winslow,* 18 B. Mon. 431, and other cases, determine in effect that such sales cannot be made. This rule of law has been so often recognized and so well understood that it ought not to be disturbed; nor is it necessary, in view of this fact, to discuss the policy or the wisdom of this rule.

It was therefore error to sell the road for payment of its debts, although an insolvent debtor, and to make it subject to the payment of all its indebtedness without regard to the legislative enactment on the subject. The Act of February, 1872, empowered the turnpike company to issue its bonds for a limited amount and to sell the same in satisfaction of its debts. A mortgage was also executed for the purpose of securing the holders of these bonds to one Benjamin Smith, all being done in accordance with the act of the legislature already referred to. It seems that the president and directors of the company were its principal creditors, and had in fact expended their own means as contractors in completing the road. It is manifest from the entire record that the cause of this expenditure by the directors had its origin from the fact that no one else was willing to assume the responsibility and look alone to the road for its payment, and the officers of the road, expecting to be protected by future legislation on the subject, constructed the road, or a part of it, out of their own resources. It was an improvement that benefited the

40

county and locality through which it was made, and without completion must have resulted in great loss to the stockholders.

It was the improvement they desired that induced its construction, and not the anticipation that an annual income would be paid on the investment made. Such improvements ordinarily yield a sum about sufficient to keep them in repair, and such appears to have been the experience of this enterprise, for while the road has been in the hands of a receiver for the purpose of paying its debts, it yields a sum scarcely more than sufficient to keep it in repair. If officers of this company have expended their money in good faith, we see no reason to disregard the action of the legislature, or any cause for adjudging the bonds issued to be void. Their taking the bonds without exposing them to public auction may not invest the officers of the road with title, or enable them to enforce payment; still, by the action of the board the bonds were issued and a mortgage executed to secure their payment. The mortgage and bonds were issued, or rather executed, before the appellee's term of office expired, and the bonds should be held valid for the purpose of paying the indebtedness to those who have expended their money, whether officers or not, in constructing the road or such expenditures as were necessary for that purpose. The deed of trust or mortgage to Smith was in fact executed on the 1st of May, although not acknowledged until a subsequent period. It would certainly look unjust to these claimants, if they have expended their money in good faith, to require them to lose it, or decline to make the product of their labor responsible for its payment. Since the legislature authorized the execution of these bonds and the company has in good faith proceeded to act under it, the chancellor will carry into execution the acts of the former board, although they may and do have a personal interest in the results.

Although the accounts of the company seem to have been loosely kept, and there is much trouble in arriving at a conclusion as to the amount due each of the parties, still, the commissioner has not only bestowed much labor in its investigation, but from the proof before him has adjusted the accounts, and upon the return of this cause the report should be adopted unless the appellant desires to take proof. The appellant may examine the parties and take other proof on the question if desired, and this can be done by a reference back to the commissioner if the appellant desires it. The appellees should be required to surrender the bonds, and for the indebtedness, the bonds,

after proper advertisement made, should be sold to discharge it, unless otherwise paid.   In this view of the case it may be proper to file an amended petition.

Judgment *reversed* and cause remanded for further proceedings not inconsistent with this opinion.

*E. W. Hawkins, for appellant.   Stevenson & O'Hara, for appellees.*